1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

| JOHNNY ANGEL GARCIA, | CV F   06-1725 DLB HC |

Petitioner,

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS, DIRECTING CLERK OF
COURT TO ENTER JUDGMENT, AND
DECLINING TO ISSUE CERTIFICATE OF
APPEALABILITY

v.

WARDEN EVANS,

[Doc. 1]

Respondent.
_____/

10
11
12
13
14
15
16
17

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to

the jurisdiction of the United States Magistrate Judge.

18
19
20
21
22
23
24
25

        Following jury trial in the Fresno County Superior Court, on December 5, 2003,

Petitioner was convicted of carjacking, robbery, and assault with a firearm.  Petitioner received

the upper term of nine years for the carjacking offense, which was enhanced by one year pursuant

to California Penal Code section 12022(a)(1).  As to the robbery conviction, Petitioner received

the upper term of five years, ordered to be served concurrently.  As to the assault with a firearm

conviction, Petitioner received the upper term of four years, also ordered to be served

concurrently.  (CT 245-247.)  The total term of imprisonment was 10 years.

26
27
28

        Petitioner filed a notice of appeal with the California Court of Appeal, Fifth Appellate

District.  On August 15, 2005, the Court of Appeal affirmed Petitioner's conviction and sentence.

(Exhibit B.)

Petitioner filed a petition for review with the California Supreme Court on or about September 7, 2005.  The petition for review was denied on November 16, 2005.  (Exhibit C.)

Petitioner filed the instant federal petition for writ of habeas corpus on November 21, 2006.  (Court Doc. 1.)  Respondent filed an answer to the petition on April 17, 2007.  Petitioner did not file a traverse.

STATEMENT OF FACTS[1]

On December 10, 2002, about 10 p.m., Christopher Border was vacuuming his 1987 BMW at a car wash when three young males, including [Petitioner] and Clough, ran toward him.  Border noticed that Clough was carrying a shotgun.

Border tried to get into his car, but Clough grabbed him, pointed the shotgun in his face and punched him in the mouth.  Clough pushed Border to the ground and demanded his keys and money. [Petitioner] smashed a passenger window of the BMW with a baseball bat and yelled at Clough to "[s]hut him up. Shut him up for good." Clough took Border's shoes and ran away.  Clough and [Petitioner] got into the BMW, Clough in the driver's seat and [Petitioner] in the front passenger seat.  Clough stalled the BMW a few times, but eventually started the car and drove away.

Border tried to flag down a motorist.  Within a few minutes, Border saw Fresno police officer Adam Cardona and told him what had occurred.  En route they observed two parked black vehicles.  One of the vehicles was flashing its headlights at the other.  As the officers approached, one of the cars drove off.  The other car, Border's BMW, was abandoned with its door open and engine running. A description of the second black car, possibly a four-door Honda sedan, was broadcast.

Several minutes later, Officers Martin Van Overbeek and Sam Hernandez stopped Clough and [Petitioner] in a four-door black Honda that matched Officer Passmore's description.  The officers noticed a shotgun between Clough's legs and ordered them to exit the vehicle.  The shotgun was discovered to be loaded. An aluminum baseball bat was found between the door frame and the front passenger seat of the vehicle.  Border was brought to the scene and positively identified both Clough and [Petitioner].

Clough and [Petitioner] were interviewed at the police station. [Petitioner] waived his Miranda [(1996) 384 U.S. 436] rights and admitted having been in the vicinity of the carjacking, claiming he had been looking for a party.  Clough and [Petitioner] were left alone together in an interview room and the conversation was recorded.  During the conversation, Officer Eloy Escareno thought he heard Clough whisper, "All I wanted was the Bimmer [*sic*]."  He also heard [Petitioner] say that, if he had been the victim, he would have just run away.

---

[1] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District appearing as Exhibit B, of the Answer to the Petition for Writ of Habeas Corpus. The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

1

2

DEFENSE

Clough and [Petitioner] attacked the interpretation of the recorded conversation, particularly claiming the alleged statement about the "Bimmer" had not occurred. [Petitioner's] mother testified that the Honda that Clough and [Petitioner] were driving was hers. The baseball bat found in the car had been left there a week earlier by someone who had broken the window and burglarized the car.

(Exhibit B, at pp.3-4.)

## DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with

3

1   respect to a state prisoner's claim that was adjudicated on the merits in state court. <u>Williams v.</u>

2   <u>Taylor</u>, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

3   will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

4   to, or involved an unreasonable application of, clearly established Federal law, as determined by

5   the Supreme Court of the United States;" or "resulted in a decision that was based on an

6   unreasonable determination of the facts in light of the evidence presented in the State Court

7   proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>,123 S.Ct.1166 (2003) (disapproving of

8   the Ninth Circuit's approach in <u>Van Tran v. Lindsey</u>, 212 F.3d 1143 (9th Cir. 2000)); <u>Williams v.</u>

9   <u>Taylor</u>, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

10  because that court concludes in its independent judgment that the relevant state-court decision

11  applied clearly established federal law erroneously or incorrectly."  <u>Lockyer</u>, at 1175 (citations

12  omitted).  "Rather, that application must be objectively unreasonable." <u>Id.</u> (citations omitted).

13      While habeas corpus relief is an important instrument to assure that individuals are

14  constitutionally protected, <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

15  (1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

16  criminal conviction is the primary method for a petitioner to challenge that conviction.  <u>Brecht v.</u>

17  <u>Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

18  factual determinations must be presumed correct, and the federal court must accept all factual

19  findings made by the state court unless the petitioner can rebut "the presumption of correctness

20  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115

21  S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>,

22  110 F.3d 1380, 1388 (9th Cir. 1997).

23  C.   <u>Admission of Petitioner's Tape-Recorded Conversation With His Codefendant</u>

24      Petitioner contends that his due process rights were violated by the trial court's admission

25  of the tape recording of a conversation between Petitioner and his co-defendant.  Specifically,

26  Petitioner contends that the recording was irrelevant and more prejudicial than probative because

27  there was no dispute about any statement brought to light by the audiotape recording.

28      Detective Escareno testified that he interviewed Petitioner after his arrest, and Petitioner

4

admitted that he had been in the vicinity of the carjacking that evening looking for a party. During the interview, Petitioner also stated that if he had been the victim, he would have just run away.  (RT 1656-1660.)  Detective Escareno indicated that both suspects were placed together in an interview room where their actions and conversations were recorded.  It was observed that Clough whispered in a soft voice a statement that, although not entirely clear, could have been: "All I wanted was the Bimmer."  (RT 1660-1666, 1913-1920, 2128-2131, 2145-2146.)

At trial, co-defendant Clough sought to admit a portion of the tape recording from the interview room, which was redacted to omit any incriminating information about Petitioner, in an attempt to rebut the testimony by Detective Escareno that no such statement regarding the "Bimmer" comment existed.  (RT 1544-1548, 1600-1601, 1802-1826, 1897-1902.)  Petitioner objected to the admission of the recording arguing that it was irrelevant and more prejudicial than probative because of the offensive language used by the defendants.  The trial court overruled Petitioner's objection and admitted the tape recording.  (RT 1814, 2128-2146.)

Petitioner presented this issue to the California Court of Appeal on direct appeal, and to the California Supreme Court in his petition for review.  The opinion of the Court of Appeal is the last reasoned decision addressing the merits of the claim.  In rejecting Petitioner's argument, the Court of Appeal held as follows:

> The tape-recorded conversation was relevant to prove [Petitioner's] guilt. [Petitioner's] incriminating statement recorded on the tape was obviously more probative of his guilt than Officer Escareno's testimony regarding what he had overheard.  Further, to the extent the tape recording validated Escareno's recollection of the conversation, it bolstered his credibility as to other facts relating to [Petitioner's] and Clough's guilt to which he testified.
>
> [Petitioner] next contends that even if the tape had some probative value, the court abused its discretion under Evidence Code section 352 by admitting it. Evidence Code section 352 states that the "court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice . . . ."
>
> [Petitioner] argues that the tape recording should have been excluded because it was cumulative, citing *People v. Milner* (1988) 45 Cal.3d 227.  *Milner* is not on point.  There the court properly excluded an 11-hour videotape and a one-hour edited version to support a doctor's opinion regarding the mental state of the defendant.  (*Id.* at pp. 238-239.)  The trial court noted that the edited version took things out of context and the unedited version would be an undue consumption of time.  Both versions included inadmissible evidence, were unduly distracting, and could confuse the jurors.  Further, the doctor's testimony on the stand was an adequate basis for describing what he saw on the tape and adequate

1    for the jury's resolution of the issues.  (*Ibid*.)  Nothing in *Milner* obligated the
court to exclude the tape recording in this case.  Here, [Petitioner's] statement on

2    the tape was probative of his guilt, and while it may have been cumulative,
[Petitioner] does not and cannot argue that it constituted an undue consumption of

3    time, which is the harm subdivision (a) of Evidence Code section 352 was
designed to avoid.

4         We also reject [Petitioner's] claim that the tape was unduly prejudicial
because expletives "peppered practically every sentence in that recorded

5    conversation."  "Evidence Code section 352[, subdivision (b)] is designed for
situations in which evidence of little evidentiary impact evokes an emotional

6    bias."  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1369.)  "Prejudicial" is not
synonymous with "damaging," but refers instead to evidence that "'uniquely tends

7    to evoke an emotional bias against [the] defendant'"" without regard to its
relevance.  (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.)

8         While [Petitioner's] use of expletives probably did not help his cause, we
cannot say in this day and age that it would uniquely tend to evoke an emotional

9    bias against him.  Given the probative value of [Petitioner's] taped statement
implicating him in the carjacking, the trial court did not abuse its discretion when

10    it found that the probative value of the statement outweighed "any prejudicial
effect arising from the jury's listening to [Petitioner's] profanity-laden remarks."

11    (*People v. Hines* (1997) 15 Cal.4th 997, 1044-1045 [defendant's claim of undue
prejudice due to his "constant use of obscenity" in relevant tape conversation

12    rejected].)

13

14    (Exhibit B, at 5-7.)

15         In a federal habeas action, review is limited to whether the petitioner's conviction

16 violated constitutional standards. <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982). Generally, the

17 admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus

18 proceeding. <u>Estelle</u>, 502 U.S. 62 (1991); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir.), *cert.*

19 *denied,* 478 U.S. 1021 (1985).  Nevertheless, with respect to the admission of prejudicial

20 evidence, habeas relief is available if the admission was fundamentally unfair and resulted in a

21 denial of due process. <u>Estelle</u>, 502 U.S. 62; <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Walters v.</u>

22 <u>Maas</u>, 45 F.3d 1355, 1357 (9th Cir. 1995); <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1192 (9th Cir. 1993),

23 *cert. denied*, 510 U.S. 1191 (1994); <u>Gordon v. Duran</u>, 895 F.2d 610, 613 (9th Cir.1990).

24 However, the failure to comply with state rules of evidence alone is neither a necessary nor a

25 sufficient basis for granting federal habeas relief on due process grounds.  <u>Jammal v. Van de</u>

26 <u>Kamp</u>, 926 F.2d 918, 919-920 (9th Cir. 1991).  "Only if there are *no* permissible inferences the

27 jury may draw from the evidence can its admission violate due process. Even then, the evidence

28 must 'be of such quality as necessarily prevents a fair trial.'"  <u>Id</u>. at 920, *quoting* <u>Kealohapaoule</u>

1   v. Shimoda, 800 F.2d 1463, 1465 (9th Cir.1986).

2        The state courts' determination of this issue was not contrary to, or an unreasonable

3   application of, clearly established Supreme Court precedent.  As stated by the trial court, the

4   tape-recorded conversation was highly relevant as it contained statements by Petitioner indicative

5   of his guilt.  The presence of obscenities used by Petitioner and his co-defendant, although

6   numerous, was not so prejudicial as to deny Petitioner a fair trial.  Accordingly, Petitioner's

7   claim must be rejected.

8   D.     Prosecutorial Misconduct

9        Petitioner contends that his due process rights were violated when the prosecutor

10  repeatedly described the evidence as being "clear and convincing" thereby attempting to lower

11  the burden of proof.

12       The objectionable comments are found in the prosecutor's rebuttal argument as follows:

13           [MR. HARRELL, PROSECUTOR]: In fact, I'm very proud of this.
        Because this is what separates us from so many other places in the world.  What it
14      basically means that 12 people will come in here and listen to the evidence I
        present, and they are going to decide whether they agree with what we have
15      decided; whether they agree these charges are, in fact, true based on the evidence
        presented, without regard to any prejudice, any sympathy, any pity for the
16      defendants, any pity for the victim, but based upon what is presented during the
        course of the trial.  You are going to decide the truth of those charges.  And
17      contrary to what Mr. Sok said, if you listen to this evidence, find the evidence to
        be clear and find it to be convincing, and therefore find the charge to be true, folks
18      your job is done.

19           MR. SOK [defense counsel for Clough]: Your Honor, that misstates the
        law.  He said clear and convincing.  That's not the burden.  I request that
20      statement be stricken.  That's also prosecutor misconduct that he's trying to apply
        different burden when he's point at the - -
21
             MR. HARRELL: Your Honor, do we need to discuss this in font [sic] of
22      the jury, because I can do that too?

23           THE COURT: The jury will be instructed as to the proper burden of proof.
        Mr. Sok, your objection is overruled.
24
             MR. HARRELL: Ladies and gentlemen that is the burden of proof.  If you
25      find the evidence to be clear, to be convincing, because that's what it's asking
        you.  You have to have an abiding conviction, a lasting belief that the charge is
26      true.

27           MR. SOK: I object again.  He keep saying clear and convincing.  That's
        not the burden in this case.
28

1        MR. HARRELL: Oh, my goodness.

2        MR. SOK: He keeps saying - - it's beyond a reasonable doubt.

3        THE COURT: Mr. Sok, it's obvious clear and convincing is not the standard of proof in a criminal case.  It's beyond a reasonable doubt.

4

5        MR. SOK: Thank you.

6        MR. HARRELL: That's correct.  And I don't think I said anything different.  What I told you, and I'll say it again because ladies and gentlemen, it is the law.  If you find that evidence clear and convincing and you believe the charge

7        to be true based upon that evidence, we have met our burden of proof.

8        MR. SOK: I'm going to object same ground again.  He's doing same thing again.

9

10       THE COURT: I'll sustain the objection.  The burden of proof is beyond a reasonable doubt.

11       MR. SOK: This is prosecutor misconduct, Your Honor.

12       MR. HARRELL: Ladies and gentlemen, there are three separate standards of proof in the law: Preponderance of the evidence, clear and convincing

13       evidence, and beyond a reasonable doubt.  Those are standards of proof.  Those are terms.  Those are words.  They do not - - those are standards and terms for

14       standards of proof in the law, but that does not tell you what they mean.  That's why we have an instruction that tells you what reasonable doubt is.  And what I

15       am telling you is that if you are convinced by this evidence that the charge is true, and you believe the evidence to be clear that the charge is true, then you people

16       have met the burden.

17       MR. SOK: Same objection.  That statement has been stricken.  This prosecutor keep repeating again and again, and Court has instructed that was

18       stricken.  What he's doing is keep saying clear and convincing.

19       THE COURT: Counsel, will you approach, please.  Ladies and gentlemen of the jury, we're going to take up a matter out of your presence.

20
(RT 2712-2714.)

21
         After an off-the record discussion, the trial court stated the following:

22
         We're dealing with a couple of issues that arise in many cases and that is the scope of argument at the end of a criminal case and objections to arguments

23       and the difficulty of trying to handle those arguments and objections to them.  And the second issue, of course, the definition of reasonable doubt.  It's no secret

24       that our courts have been wrestling with the concept of reasonable doubt for about as long as we have had the standard.  Now, the reason I sustained the objection to

25       the "clear and convincing" is there is a particular standard of proof in our system, the lowest standard involving the least burden on the proponent is preponderance

26       of the evidence, of course, and then there's a higher standard clear and convincing that is used in some cases.  It used to be used in more cases than it is now, but it is

27       I think all would concede less than reasonable doubt, and then we have the reasonable doubt standard.

28

8

1

2          Now, there's nothing in the reasonable doubt instruction about clear and
     convincing; that doesn't mean that counsel can't argue as imaginatively and
3     forcefully as possible as to what the jury ought to consider in trying to reach a
     decision and applying the reasonable doubt standard.  The reason for the Court's
4     sustaining the objection is that while clear and convincing are both evidence, are
     both adjectives, clear and convincing evidence is a term of art under the law, and
     it is not a term of art or definition that's to be applied in criminal cases.  And the
5     reason - - additional reason the objection was sustained, is that there is at least a
     potential for the jury to be confused.

6    (RT 2718-2719.)

7          After the defendants were found guilty, they filed motions for a new trial based on the

8    prosecutor's alleged misconduct.  (Supp. CT 1-43; Supp. GCT 1-43; RT 3601-3616.)  The trial

9    court held a hearing on the motion, and took the matter under submission, but stated the

10   following:

11          I do know that at least twice I addressed the jury.  It's obvious clear and
     convincing evidence is not the standard of proof in a criminal case.  It's beyond a
12    reasonable doubt, and I went on and sustained an objection.

13          The jury was correctly instructed.  They were instructed prior to the start
     of taking of evidence.  In other words, they were told of the correct standard
14    during jury selection.  They were told of the correct standard in your instructions,
     not only in the instructions that were read to them but also they had a copy of 2.90
15    for their use during their deliberations.  And the Court also did take up the matter
     further, and it's my understanding there weren't any further claimed
16    misstatements.  But in any event I had a sidebar with counsel and addressed the
     issue at the request of the defendants.

17

18          I find and determine that Mr. Harrell did not engage in prejudicial
     misconduct.  He was trying to argue what his burden was.  I wouldn't be surprised
19    if both prosecutors and defense counsel tried to think of another argument that can
     be presented to the jury to make the standard understandable.  And while I realize
20    that bad faith is no longer the test, with respect to Mr. Harrell there was no bad
     faith, and I find no prejudice.

21          I simply cannot understand or cannot believe that the jury can understand
     that the standard was anything other than beyond a reasonable doubt, and I am
22    convinced that the way the evidence came in, and I do believe that and find that
     the evidence was more compelling or stronger than the defense might be willing
23    to concede at this point.

24          They did have an eyewitness victim who was able to make two in-field
     identifications, and we do have one of the defendants found with a sawed-off
25    shotgun between his legs in the vehicle being driven by the other defendant very
     close to where the events took place.  So the evidence was strong against the
26    defendants and did support the jury determinations of the guilt on the three
     different counts.

27          As I say, I find there is no prejudicial misconduct on the part of the people
28    because the issue was brought to their attention during the argument as well as

before the taking of evidence and during their instructions, so they could not have been misled as to what test in a criminal trial is.

The Court's referring to the beyond a reasonable doubt standard that is set forth in CAL-JIC 2.90.

(RT 3615-3616.)

The trial court subsequently denied defendants' motion for a new trial in a minute order. (CT 259.) Petitioner presented this issue on direct appeal to the California Court of Appeal, and to the California Supreme Court by way of petition for review. The opinion of the Court of Appeal is the last reasoned state court decision addressing the merits of the claim. In rejecting the claim, the Court of Appeal held:

Assuming without deciding that the prosecutor's statements constituted misconduct, we find no reasonable likelihood that the jury misapplied these comments and found appellants guilty on proof less than beyond a reasonable doubt.

First, the trial court corrected the prosecutor's statements. When the prosecutor misstated the burden of proof - - "If you find the evidence clear and convincing and you believe the charge to be true based upon that evidence, we have met our burden of proof" - - the court promptly sustained defense counsel's objection and instructed the jury: "The burden of proof is beyond a reasonable doubt." When the prosecutor used "clear" and "convincing" as adjectives to describe the state of the evidence, the court overruled defense counsel's objections to the statements but reiterated to the jury, "it's obvious clear and convincing is not the standard of proof in a criminal case. It's beyond a reasonable doubt." After the arguments concluded, the court instructed the jury that it must apply the law "that I state to you," and "[i]f anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflict with my instructions on law, you must follow my instructions." (See CALJIC No. 1.00.) The court also instructed on the presumption of innocence and the prosecutor's burden of proving appellants guilty beyond a reasonable doubt. (CALJIC No. 2.90.)

Second, the prosecutor's last objectionable statement was ambiguous and confusing and therefore probably worthless to the jury deciding the case: "[Conflicts in the evidence] does not equal reasonable doubt because it's after you have made that comparison consideration that you decide whether the charge is true or not, and only if you find the charges are not true, only if you find that you don't have a lasting belief in the truth of the charge, that's when you have reasonable doubt."

Third, before the prosecutor made his objected-to remarks, all three counsel had argued the proper beyond a reasonable doubt standard of proof to the jury.

Under the circumstances, there is no reasonable likelihood the jury applied the complained-of comments in an objectionable way. (*People v. Morales*, *supra*, 25 Cal.4th at p.44.)

1    (Exhibit B, at 12-13.)

2         A habeas petition will be granted for prosecutorial misconduct only when the misconduct

3    "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

4    Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (*quoting* Donnelly v.

5    DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); see Bonin v. Calderon, 59 F.3d

6    815, 843 (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct

7    must be "of sufficient significance to result in the denial of the defendant's right to a fair trial."

8    Greer v. Miller, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (*quoting* United States v.

9    Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)).  Under this standard, a petitioner must show that

10   there is a reasonable probability that the error complained of affected the outcome of the trial -

11   i.e., that absent the alleged impropriety, the verdict probably would have been different.

12        In the context of improper argument, the reviewing court must examine the likely effect

13   of the statements in the context in which they were made in order to determine if the comments

14   so infected the trial with unfairness as to render the resulting conviction a denial of due process.

15   Turner v. Calderon, 281 F.3d 851, 868 (9th Cir. 2002); Sandoval v. Calderon, 241 F.3d 765, 778

16   (9th Cir. 2001); see also Donnelly, 416 U.S. at 643; Darden, 477 U.S. at 181-183.  Accordingly,

17   in order to place the objectionable comments in context, the court must examine the entire

18   proceedings to resolve a claim of prosecutorial misconduct during closing argument.  See United

19   States v. Robinson, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in

20   context. . . .").

21        After a thorough review of the entire proceedings, this Court finds that the state courts'

22   finding that Petitioner suffered no prejudice as a result of any alleged prosecutorial misconduct

23   was not contrary to, or an unreasonable application of, clearly established Supreme Court

24   precedent.  As the Court of Appeal stated, even if this Court assumes that the prosecutor's

25   comments were improper, Petitioner makes no showing that he suffered any prejudice as a result.

26   Prior to the prosecutor's statements, both defense counsel had thoroughly argued the appropriate

27   standard of beyond a reasonable doubt.  (RT 2445-2457, 2513, 2517-2518, 2551, 2555-2557.)

28   The Court repeatedly admonished the jury that the standard of proof was obviously not clear and

11

1  convincing, but rather beyond a reasonable doubt.[2]  (RT 2713, 2741-2742, 2755-2757.)  In

2  addition, the jury was instructed that statements made by the attorneys during trial are not

3  evidence.  (RT 2734; CT 182 [CALJIC 1.02].)   Immediately following the prosecutor's rebuttal

4  argument, the trial court instructed the jury with CALJIC 2.90 and 2.91 which defined the

5  standard of proof as follows:

6          "Reasonable doubt" is defined as follows: It is not a mere possible doubt
        because everything relating to human affairs is open to some possible or
7       imaginary doubt.  It is that state of the case which after the entire comparison and
        consideration of all of the evidence leaves the minds of the jurors in that condition
8       that they cannot say they feel an abiding conviction of the truth of the charge.
           The burden is on the people to prove beyond a reasonable doubt that the
9       defendant is the person who committed the crime with which he is charged - - or
        crimes in this case.  If after considering the circumstances of the identification and
10      any other evidence in this case you have a reasonable doubt whether the defendant
        was the person who committed the crime, you must give the defendant the benefit
11      of that doubt and find him not guilty.

12  (RT 2741-2742; CT 204-205 [CALJIC 2.90 & 2.91].)

13  Accordingly, based on a review of this record, even if it is assumed that the prosecutor

14  committed misconduct, Petitioner has simply failed to demonstrate that the comments so infected

15  the trial with unfairness as to render the resulting conviction a denial of due process, and the state

16  courts' determination of this issue was not contrary to, or an unreasonable application of, clearly

17  established Supreme Court precedent.

18  E.   Admission of Enhanced Recording of an Audiotape Previously Admitted at Trial

19          Petitioner contends that his due process rights were violated when the trial court allowed

20  the jury to consider evidence that was not admitted into evidence during trial.

21          During the presentation of the defense case, Jeffrey Hall, a sound production engineer,

22  testified concerning the manner in which he enhanced the tape recording of the conversations in

23  the interview room between the defendants in an attempt to make the conversations more

24  audible.  Although he was successful in doing so, much of the conversations remained very soft.

25  (RT 1827-1830.)  He recorded the enhanced version of the recording on a CD, which he gave to

26

27

28      [2]   It is noteworthy that during the prosecutor's rebuttal argument, there was a big board stating the beyond a reasonable doubt standard.  (RT 2715-1726.)

1    the Public Defender's Office.  (RT 1841.)  Mr. Hall neglected to bring a duplicate the day of his

2    testimony, and apparently the Public Defender's Officer returned their copy of the CD to his

3    company.  (RT 1846.)

4        The prosecution subsequently obtained a copy of the CD and requested permission to play

5    it through the computer in the courtroom.  Defense counsel objected stating that the jury had

6    already heard the original tape and that playing the enhanced version was unnecessary and

7    repetitive as well as objectionable under California Evidence Code section 352.  (RT 2174-2178,

8    2189.)  The court allowed the CD to be played to the jury.  (RT 2190-2192.)  Specifically, the

9    court stated:

10            THE COURT:  I considered the objections by the defendants, and I have
        considered the factors in Evidence Code Section 352.  I don't think it will take up
11       so much of the Court's time that it would be objectionable on that ground,
        although we've spent a lot of time on this issue.  I'm talking about how much time
12       it would take to present it to the jury.  And I don't see confusion being caused by
        it.  And I don't think it's more prejudicial than probative.  And I don't think that
13       the jury is going to get misled.
            This has been - these two claimed statements have been the subject of a
14       considerable amount of testimony, and they don't come as surprises to the
        defendants.  I think that the people's case has from the beginning, in effect,
15       featured one statement by [Petitioner] - or alleged statement by [Petitioner], and
        alleged statement by Mr. Clough.  And when I say - I say that because I believe
16       the reports turned over to the defendants, or defense counsel, put both of them on
        notice that the people wanted to prove up those two statements.
17            So it's the two statements to the extent the jury finds they were made, have
        been in the case from early on, and don't come as a surprise to anybody.
18
    (RT 2195-2196.)
19
20        The relevant portions were located on the disk, and then played for the jury.  (RT 2198.)

21   While the jury was deliberating, they requested to hear the CD again.  Defense counsel objected

22   arguing that it was not admitted into evidence and had not been redacted.  (RT 3001-3003.)  The

     trial court stated:
23
24            THE COURT:  I'm going to allow the CD to be played, but first of all,
        we'll find out how much of the CD the jury wants played.  They have made this
25       request.  The CD is quite similar to the tape, and the tape has been admitted as G
        and has already been played to the jury.  And at least a portion of the CD was also
26       played during the taking of the evidence.  So I will grant the request.  I will
        inquire of the foreperson exactly how much of the tape they want to hear.
27            MR. HARRELL:  You [sic] Honor, I should add that the only reason the
        people did not move that into evidence or attempt to move it into evidence is
28       because it wasn't redacted.  We learned about the existence of the CD during the
        course of the trial, and we don't have the equipment to redact it here in the middle

                                              13

1   of the courtroom.  So while the CD represents exactly what's on the tape and the
2   tape could be redacted and therefore it could go in there to the jury, the CD could
    not because we couldn't do it during the course of the trial.

3   (RT 3006-3007.)

4        The attorneys subsequently agreed upon the appropriate sections to be played for the jury,

5   and it was played in open court, not in the jury room.  (RT 3311, 3314.)  At the conclusion, the

6   attorneys agreed that the *only* the appropriate sections had been played for the jury.  (RT 3316.)

7        Petitioner presented this issue to the California Court of Appeal on direct appeal, and to

8   the California Supreme Court by way of petition for review.  Like Petitioner's other claims, the

9   opinion of the Court of Appeal is the last reasoned decision addressing the merits of the claim.

10  In rejecting Petitioner's claim, the California Court of Appeal stated:

11          "'It is a fundamental rule that all evidence shall be taken in open
            court and that each party to a controversy shall have knowledge of,
12          and thus be enabled to meet and answer, any evidence brought
            against him.'" (*People v. Bogle* (1995) 41 Cal.App.4th 770, 778.)
13
14          However, when a jury considers evidence that was provided in error, the
            defendant must show prejudice, and we will not reverse unless it is reasonably
            probable that an outcome more favorable to the defendant would have resulted in
15          the absence of the error.  (*People v. Jackson* (1996) 13 Cal.4th 1164, 1213-1214;
            *People v. Clair* (1992) 2 Cal.4th 629, 668.)
16
17          In this case, given that all parties agreed that the content of the CD played
            for the jury during deliberations was identical to the content of the tape played for
            the jury during trial, even if we assume error, appellant have failed to show how it
18          is reasonably probable that an outcome more favorable to them would have
            resulted in absence of the error.
19
20          First, the two critical parts of the CD had been played for the jury during
            trial—Clough's alleged "Bimmer" statements and [Petitioner's] "just took off"
21          statement.  Second, every part of the CD played for the jury during deliberations
            covered the exact part of the audiotape played for the jury during trial, and the jury
22          had the audiotape available to play during deliberations.  Third, the transcript
            accompanying the CD was the same transcript the jury used to help it decipher the
            audiotape.  Finally, nothing about the CD per se rendered it inadmissible.  The CD
23          would have been admitted into evidence had the necessary technology been
            available during trial to redact it consistent with the audiotape.
24
25          On this record, appellants have not shown it is reasonably probable that an
            outcome more favorable to them would have resulted in the absence of the error.
            We also rejected appellants' perfunctory claim that the error violated due process.
26          In any event, we find no basis for reversal under the harmless beyond a reasonable
            doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24.  (See *People v.*
27          *Clair*, *supra*, 2 Cal.4th at p. 669, fn. 10.)

28  (Exhibit B, at 8-9.)

                                           14

1    The Sixth Amendment guarantees all criminally accused a fair trial by an impartial jury

2    and all findings must be based only on the evidence presented at trial.  Turner v. Louisiana, 379

3    U.S. 466, 472-473 (1965).  In rendering its verdict, the jury may not consider extrinsic evidence,

4    i.e. evidence not presented at trial.  Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir. 1987).  Jury

5    exposure to extrinsic evidence does not necessarily constitute per se reversible error.  In

6    determining whether exposure of the jury to unauthorized information denies Petitioner a fair

7    trial, the reviewing Court must determine whether the jury would have decided the facts of the

8    case differently as a result of their exposure.  Dyer v. Calderon, 113 F.3d 927, 946-948 (9th Cir.

9    1997), vacated on other grounds, 151 F.3d 970 (9th Cir. 1998) (en banc).  Petitioner is only

10   entitled to relief under section 2254 if he can establish that the exposure to unauthorized

11   information had a "'substantial and injurious effect or influence in determining the jury's

12   verdict.'" Sassounian v. Roe, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting Brecht v.

13   Abrahamson, 507 U.S. 619, 623 (1993)).  That is, "actual prejudice" must be present.  Brecht,

14   507 U.S. at 637.

15       The state courts' determination of this issue was not contrary to, or an unreasonable

16   application of, clearly established Supreme Court precedent.  It is clear from the record that any

17   alleged error did not have a substantial and injurious effect or influence in determining the jury's

18   verdict.  Although the CD was not actually admitted into evidence, it was nonetheless played for

19   the jury as part of the prosecution's rebuttal case. (RT 2198.)  In addition, the tape recording of

20   the exact conversation was admitted into evidence and was present in the jury room during

21   deliberations.  **(**RT 1814, 2128-2146.)  Further, as Respondent correctly states, the only reason

22   the CD was not admitted into evidence was because it had not and could not be redacted.  The

23   attorneys spent a significant amount of time determining which portions were relevant, all agreed

24   on the portions to be played, and all agreed that only those relevant portions were actually played

25   for the jury.  Because the jury did not hear anything that it had not already heard during the trial,

26   it simply cannot be said that Petitioner suffered any resulting prejudice, and his claim fails on the

27   merits.

28   ///

F.     <u>Sentencing Error/Violation of Sixth Amendment Right to Jury Trial</u>

Petitioner contends that his constitutional rights were violated by the trial court's imposition of the upper term on his carjacking conviction.  More specifically, Petitioner contends that, under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the trial court erred by imposing an upper term based on facts that were neither found by the jury nor admitted by Petitioner. (Petition, at 7.)

As previously stated herein, Petitioner was sentenced on February 10, 2004, to the upper term of nine years on his carjacking conviction.  As to the robbery conviction, Petitioner received the upper term of five years, ordered to be served concurrently.  As to the assault with a firearm conviction, Petitioner received the upper term of four years, also ordered to be served concurrently.  (CT 245-247.)  The total term of imprisonment was 10 years.

In imposing the sentence, the trial judge found no factors in mitigation.  As circumstances in aggravation, the court found that Petitioner's juvenile convictions were numerous and of increasing seriousness.  In addition, Petitioner's prior performance on probation and/or parole had been unsatisfactory.   (RT 3927-3928.)

As with all of Petitioner's other claims, this claim was presented to the California Court of Appeal on direct appeal, and to the California Supreme Court by way of petition for review. The opinion of the Court of Appeal is the last reasoned state court decision addressing the merits of the claim. The California Court of Appeal rejected Petitioner's <u>Blakely</u> claim based on the trial court's imposition of the upper term in light of the California Supreme Court's decision in <u>People v. Black</u>, 34 Cal.4th 1238, 1244 (2005).  (Exhibit B, at 19-20.)

Because the state court's decision was issued prior to <u>Cunningham</u>, the issue becomes whether that decision should be applied retroactively to Petitioner on collateral review, which has not yet been addressed by the Ninth Circuit Court of Appeals.  For the reasons discussed *infra*, this Court, like several other district courts, finds in the negative.

In <u>Teague v. Lane</u>, 489 U.S. 288, 109 S.Ct. 1060 (1986), the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." <u>Teague</u>, 489 U.S. at 310.  A new rule is one

1    which "breaks new ground or imposes a new obligation on the States or the Federal

2    Government;" in other words, a new rule is one where "the result was not dictated by precedent

3    existing at the time of the defendant's conviction became final." Teague, 489 U.S. at 301; Snook

4    v. Wood, 89 F.3d 605, 612 (9th Cir. 1996).

5    A Teague analysis requires the Court to engage in a three step process. First, the Court

6    must determine the date the petitioner's conviction became final. See Caspari v. Bohlen, 510

7    U.S. 383, 390, 114 S.Ct. 948, 953-954 (1994); Snook, 89 F.3d at 612. Second, the Court must

8    survey the legal landscape as it existed when the petitioner's conviction became final and

9    determine whether a state court considering the petitioner's claim at that time would have felt

10   compelled by existing precedent to conclude the new rule was required by the Constitution.

11   Caspari, 510 U.S. at 390; Saffle v. Parks, 494 U.S. 484, 488 110 S.Ct. 1257, 1260 (1990). Third,

12   if the Court determines that the petitioner seeks the benefit of new rule, the Court must consider

13   whether the relief sought falls within one of the two narrow exceptions to non-retroactivity. See

14   Gilmore v. Taylor, 508 U.S. 333, 345, 113 S.Ct. 2112, 2119 (1993). The two narrow exceptions

15   are (1) "the rule places a class of private conduct beyond the power of the State to proscribe . . .

16   or addresses a substantive categorical guarante[d] accorded by the Constitution;" or (2) the rule

17   announces a "watershed rule[ ] of criminal procedure implicating the fundamental fairness and

18   accuracy of the criminal proceeding." Graham, 506 U.S. at 477-78, 113 S.Ct. 892, 903 (internal

19   quotations omitted). The first exception only applies to rules that place certain private

20   "individual conduct beyond the power of the criminal law-making authority to proscribe."

21   Teague, 489 U.S., at 307. The second exception applies to watershed rules, which are those rules

22   that are "central to an accurate determination of innocence or  guilt." Teague, 489 U.S. at 313,

23   109 S.Ct. 1060. Watershed rules of criminal procedure implicate "the fundamental fairness and

24   accuracy of the criminal proceeding," Saffle, 494 U.S. at 495;  Teague, 489 U.S. at 311, and are

25   the small core of rules that require procedures which are implicit in the concept of ordered

26   liberty. Graham, 506 U.S. at 478, 113 S.Ct. at 903.

27   First, neither Apprendi, Blakely, or Booker, have been applied retroactively. Sanchez-

28   Cervantes, 282 F.3d 664, 666-667 (9th Cir. 2002); Schardt v. Payne, 414 U.S. 1025 (9th Cir.

1  2005); United States v. Cruz, 423 F.3d 1119, 1121 (9th Cir. 2005).  This being so, it appears

2  highly unlikely that Cunningham would be applied retroactively.  This finding is supported by

3  several district courts that have addressed the issue.  See e.g. Fennen v. Nakayema, 494

4  F.Supp.2d 1148, 2007 WL 1742339 (E.D. Cal., June 14, 2007); Rosales v. Horel, 2007 WL

5  1852186 (S.D. Cal., June 26, 2007); Salerno v. Schriro, 2007 WL 2153584 (D. Ariz., July 24,

6  2007).

7        As was the case in Blakely, Cunningham shifted the decision-making authority from the

8  judge to the jury to determine any facts which may increase a defendant's sentence, such

9  determination is a procedural rather than substantive rule.  Further, a mere change in the law as to

10  the decision-making authority regarding factual findings bearing on a sentence enhancement is

11  not a watershed rule in criminal procedure.  See Schardt, 414 F.3d at 1036.

12        Here, the California Court of Appeal's decision, was subsequently affirmed by the

13  California Supreme Court's decision in Black, which was overruled by the United States

14  Supreme Court in Cunningham.  Petitioner argues that Blakely was decided before his conviction

15  became final, and Cunningham is merely an extension of the holding in Blakely and should be

16  applied to the cases that were not final prior to the decision in Blakely, such argument is not

17  persuasive.  To make that determination, this Court would have to find that the holding in

18  Cunningham was dictated by Blakely.  The Cunningham decision was a six-member majority

19  opinion.  Justices Alito, Kennedy, and Breyer, filed a dissenting opinion, reasoning that Apprendi

20  should not be extended to California's determinate sentencing law, because the sentencing

21  scheme was indistinguishable from the *advisory* Guideline scheme approved of in Booker.[3]

22  Justice Alito, writing for the dissent stated that "the Booker Court unanimously agreed that

23  judicial factfinding under a purely advisory guidelines system would [] comport with the Sixth

24  Amendment."  Cunningham, 127 S.Ct. at 874.  It was noted that "the California law gives a

25  judge at least as much sentencing discretion as does the post-Booker federal scheme."  Id. at 877.

26

27        [3] Justices Kennedy and Breyer also believed that Apprendi could be applied to only sentencing
28  enhancements based on the nature of offense (jury determination) and not the nature of the offender (judicial
   determination).  127 S.Ct. at 872-873.

1  "The California scheme-like the federal 'advisory Guidelines'-does require that this discretion be

2  exercised reasonably." Id. at 878.

3      In light of the split and strong dissent in the Cunningham decision, it simply cannot be

4  said that the result in Cunningham was dictated by Blakely.  Even though the holding in Blakely

5  was the central reasoning in support of the majority opinion in Cunningham, mere application of

6  a prior decision is not equivalent to being "dictated by precedent."  A new rule is defined as "a

7  rule that ... was not 'dictated by precedent existing at the time the defendant's conviction became

8  final.'" Whorton v. Bockting, __ U.S. __, 127 S.Ct. 1173, 1181 (2007).  In light of the fact that

9  three justices found that California's sentencing scheme was more akin to the advisory

10  Guidelines of which Booker approved, this Court finds that "reasonable jurists" could find the

11  same.  See e.g. Whorton v. Bockting, 127 S.Ct. at 1181.

12      Next, the issue becomes whether the state courts' determination of this issue was

13  contrary to, or an unreasonable application of established Supreme Court authority.  The

14  imposition of the upper-term was reasonable as it was based primarily on the circumstances of

15  Petitioner's prior criminal history including, his prior juvenile convictions, the increasing

16  severity of his prior offenses, and his prior performance on probation and parole.  (RT 3927-

17  3928.)  Although in Cunningham, the Supreme Court invalidated California's upper-term

18  sentencing scheme based on facts not found by the jury, it specifically acknowledged, as it did in

19  prior cases, that sentences based on a defendant's prior convictions does not violate the Sixth

20  Amendment.  Cunningham, 127 S.Ct. At 860, 864, 868; accord Blakely, 542 U.S. at 301;

21  Apprendi, 530 U.S. at 490; Almendarez-Torres v. United States, 523 U.S. 224 (1998).  To this

22  end, the trial court found that the upper-term was warranted based on the fact that Petitioner's

23  prior juvenile convictions were numerous and increasing in seriousness, and his prior

24  performance on probation and parole has been unsatisfactory.  (RT 3927-3928.)  Petitioner did

25  not object at trial or dispute these findings.

26      As Respondent correctly submits, the United States Supreme Court has never defined the

27  scope of the prior conviction exception; however, circuit case law supports the finding that it is

28  reasonable to conclude that this exception includes the type of judicial findings made by the trial

1   court in this case.[4]  To illustrate, the Second Circuit Court of Appeals, has held that the prior

2   conviction exception includes "not only the mere fact of previous convictions but other related

3   issues as well.  Judges frequently must make factual determinations for sentencing, so it is hardly

4   anomalous to require that they also determinate the 'who, what, when, and where' of a prior

5   conviction."  United States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001); see United States v.

6   Fagans, 406 F.3d 138, 141-142 (2d Cir. 2005) ("the type and length of a sentence imposed seem

7   logically to fall within this exception.")  The Eighth Circuit Court of Appeals has determined that

8   the prior conviction exception applies to "sentencing-related circumstances of recidivism,"

9   stating "that it is entirely appropriate for judges to have 'the task of finding not only the mere fact

10  of previous convictions but other related issues as well.'"  United States v. Kempis-Bonola, 287

11  F.3d 699, 703 (8th Cir. 2002).  In addition, the Tenth Circuit Court of Appeals has stated that "the

12  'prior conviction' exception extends to 'subsidiary findings' such as whether a defendant was

13  under court supervision when he or she committed a subsequent crime."  United States v.

14  Corchado, 427 F.3d 815, 820 (10th Cir. 2005).

15       In addition, several state courts, including the California Supreme Court have likewise

16  found that the prior conviction exception includes the type of finding as was made in the instant

17  case.  More specifically, the California Supreme Court has noted that the exception includes

18  more than the mere fact of a prior conviction and includes such matters as the sentence imposed

19  and the status and timing of the incarceration in relation to the subsequent offenses.  People v.

20  McGee, 38 Cal.4th 682, 700-703 (2006) (citing with approval People v. Thomas, 91 Cal.App.4th

21  212, 221-222 (2001)); see also State v. Stewart, 791 A.2d 143, 151-152 (Md. 2002) (prior

22  conviction exception "is not limited solely to prior convictions.  The general rule is that there is

23  no right to a jury trial on matters related to the broader issue of recidivism.").  The Supreme

24  Courts of Washington, Connecticut, Indiana, and Minnesota have all held that the exception may

25  include a determination of whether the defendant was on probation at the time of the current

26  offense.  See State v. Jones, 149 P.3d 636, 640-641 (Wash. 2006); State v. Fagan, 905 A.2d

27

28       [4]  Out-of-circuit federal and state appellate court decisions are helpful in determining the reasonableness of
a particular state court adjudication.  LaJoie v. Thompson, 217 F.3d 663, 669 n.6 (9th Cir. 2000),

1  1101, 1121 (Conn. 2006); Ryle v. States, 842 N.E.2d 320, 323-325 (Ind. 2005); State v. Allen,

2  706 N.W.2d 40, 47-48 (Minn. 2005).

3       Moreover, in California, "[a] single aggravating factor is sufficient to impose an

4  aggravated upper prison term where the aggravating factor outweighs the cumulative effect of all

5  mitigating factors. . . ." People v. Nevill, 167 Cal.App.3d 198, 202 (1985); see also People v.

6  Black, 41 Cal.4th 799, 806 (2007).  Here, it was reasonable for the state appellate court to find

7  that Petitioner's constitutional right to a jury trial was not violated when the trial court imposed

8  the upper term based on the finding that his juvenile convictions were numerous and increasing

9  in seriousness and his prior performance on probation and parole had been unsatisfactory.

10  Accordingly, because the trial court's imposition of the upper term was properly based on

11  Petitioner's recidivism and prior criminal history, it was reasonable to reject Petitioner's jury trial

12  claim.

13       Furthermore, even if there was error under Blakely, Petitioner has not established the

14  requisite harm. Blakely errors are subject to harmless error analysis as it is not considered to be a

15  structural error.  Washington v. Recuenco, __ U.S. __, 126 S.Ct. 2546 (2006).  In a habeas

16  corpus proceeding, the proper standard of review is that announced in Brecht v. Abrahamson,

17  507 U.S. 619, 623 (1993), whether the error had a "substantial and injurious effect."  This is so,

18  regardless of whether the state appellate court recognized the error and reviewed it for

19  harmlessness under the "beyond a reasonable doubt" standard of Chapman v. California, 386

20  U.S. 18, 24 (1967).  Fry v. Pliler, __ U.S. __, 127 S.Ct 2321, 2325-2327 (2007).  Because only

21  one aggravating factor need be found to impose the upper term sentence, the error is harmless if

22  the jury could have found, at a minimum, at least one of the aggravating circumstances true

23  beyond a reasonable doubt.

24       Here, any error was harmless as the imposition of the upper term was based on

25  uncontested or overwhelming evidence.  It was undisputed that Petitioner had a lengthy juvenile

26  criminal history, beginning at the age of eight and ending with the commitment offense at age

27  sixteen.  (RT 3927.)  The probation report reflects several juvenile adjudications including first

28  degree burglary, petty theft, vehicle theft, and possession of deadly weapon. (CT 269-270.)

Petitioner had previously performed unsatisfactorily on parole or probation and his offenses were increasing in seriousness.  There was ample evidence for the jury to render a verdict beyond a reasonable doubt on the above recidivist circumstances, any one of which would have authorized the imposition of the upper term.  This is particularly so, given the lack of any mitigating factors and the strong overwhelming evidence supporting the factors in aggravation.  Based on the foregoing, the Court finds that any error was harmless under <u>Brecht</u>, and the claim must be denied.

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.      The petition for writ of habeas corpus is DENIED;

2.      The Clerk of Court is directed to enter judgment in favor of Respondent; and,

3.      The court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; <u>Hoffman v. Arave</u>, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

**Dated:   January 23, 2008**               /s/ **Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE